Statement of the case.

---

JOHN B. REID ET AL. *v.* WALTER L. TROWBRIDGE ET AL.

1. CITY OF VICKSBURG. *Charter. Laws* 1884, *p.* 422. *Laws* 1886, *p.* 694. *Laws* 1888, *p.* 468. *Contract. Electric lights.*

    Under the charter of the city of Vicksburg (laws 1884, p. 422, as amended laws 1886, p. 694) the municipal authorities had power to make a valid contract for electric lights, without advertising for bids and without submitting the matter to a popular vote; and the power was not taken away by the act of March 10, 1888 (laws 1888, p. 468).

2. MUNICIPAL CONTACTS. *Duration.*

    Ten years is not such an unreasonable time for the duration of a contract by a city for electric lights as to render it invalid.

3. SAME. *Constitution* 1890, *sec.* 183.

    A city is not forbidden by constitution 1890, sec. 183, prohibiting municipalities from making appropriations or loaning its credit to a corporation. to contract with a corporation for electric lights for its streets.

4. SAME. *Exclusive privilege. Taxpayer.*

    The objection that a contract made by a city confers an exclusive right can be made only by the city or some party making application for privileges. A taxpayer cannot make the objection because of a provision in the contract for a special levy of taxes without showing that it is in excess of charter limitations.

FROM the chancery court of Warren county.

HON. WILLIAM C. MARTIN, Chancellor.

Reid and another, appellants, were complainants in the court below; Trowbridge and others were defendants there.

The city of Vicksburg, in the early part of May, 1899, made a contract with the Vicksburg Railroad, Power & Manufacturing Company for lighting the streets of the city by electricity. The city was to pay $100 per annum for each of 125 street lights, and the contract was to last ten years. At the

time of the execution of the contract the city was being lighted under a previous one made in 1895 with the Vicksburg Electric Light Company at a cost of $102 per light, and which would not have expired for two years. The previous conract had been assigned to the Vicksburg Railroad, Power & Manufacturing Company. Appellants began the suit May 17, 1899, to enjoin operations under the latter contract for the following causes: (1) Under the act of March, 1888, the city could not make such a contract except after submitting it to the qualified voters. (2) If this is not true, then it must have advertised for bids. (3) It guarantees a special levy of taxes to meet the obligations incurred. (4) It is unreasonable and oppressive. (5) It grants an exclusive right. (6) It was entered into for the purpose of making an appropriation, and giving the aid of the city to the street railway company. (7) In awarding the contract the council acted arbitrarily, without exercising any discretion whatever, which made it illegal. (8) The company suppressed a contemplated bid for the contract. On motion of appellees, the injunction was dissolved. From that decree this appeal was taken by appellants.

*Catchings, Hudson & Catchings; Catchings & Catchings,* and *Magruder & Bryson,* for appellants.

*Miller, Smith & Hirsh, Henry & Scudder, Shelton & Brunini, McLaurin & Anderson,* and *Voller & Mounger,* for appellees.

Argued orally by *T. C. Catchings* and *L. W. Magruder,* for appellants, and by *J. Hirsh,* for appellee.

CALHOON, J., delivered the opinion of the court.

The city of Vicksburg is not under the municipal chapter of the code of 1892, and so the contractual powers of her governing board must be controlled by her charter. In the case before us the question arises, to be first disposed of, whether that

board could, under that charter, and under a legislative act of 1888, make a valid contract for electric lighting without advertising for bids and without submitting it to popular vote. On this and all the questions in controversy counsel on either side have exhausted authority in their briefs, which are monuments of laborious research and professional skill ·and ability. To them we point the curious for all the learning on the subject and proceed to state conclusions after carefully examining the leading citations they offer.

The appellants, two gentlemen who are citizens and taxpayers of the city, say that the contract they complain of in this record is *ultra vires* and void, and that its execution should be perpetually prohibited by injunction. It must be premised that, before this contract was made, the city was under a contract, whether valid or void it is bootless to inquire, with a corporation known as "The Vicksburg Electric Light Company," the term of which then lacked two years of expiring; that this contract had been bought by another corporation known as "The Vicksburg Railroad, Power & Manufacturing Company," an appellee in this cause, and that the new contract, the one with the latter being the one complained of, extended the former for eight years, with a reduction of $2 per lamp per annum for the unexpired two years and the remaining eight years, but added about twenty-five lamps to be furnished. It must also be noted that, before making the former contract, the one with the "Vicksburg Electric Company," the municipal board did advertise for competitive bidding, but this was the only instance of such action for street lighting in the whole history of the city. The following are the provisions of the charter, in any way pertinent, as it appears in the laws of 1884, page 422, *et seq.*:

"Section 25. *Be it further enacted,* That the board of mayor and aldermen shall not make any contract involving an expenditure of corporation funds, relating to work on public streets, or the erection, extension or repair of public buildings,

where the cost of the proposed work shall exceed $500, or for materials to be furnished exceeding $200 in value, except in the following manner: Upon the direction of the board the mayor shall advertise for sealed proposals to do the contemplated work, for ten days, in a newspaper published in the city. At the first meeting of the board, after such publication, the mayor shall open and lay before the board all proposals received by him, and the board shall accept the lowest and best bid, or they may reject all bids made, and direct publication to be made for other proposals. No proposal shall be considered unless accompanied by the names of the surety or sureties proposed to be given by the bidder upon his bond for the faithful execution of the contract, if awarded to him; and in all cases of contracts under this provision, bond and security in a sum sufficient to indemnify the city, shall be required of the contractor." . . . .

"SEC. 28. *Be it further enacted*, That the following additional powers may be exercised by the board of mayor and aldermen, by ordinances and resolutions adopted at any regular or special meeting." . . . .

"ART. 27. To provide for the health, peace, security, good government, convenience and general welfare of the inhabitants of the city."

Next we find an amendment of the charter in the laws of 1886, pages 694-5, which adds article 29 to the twenty-eighth section of the charter. This added article is in these words:

"ART. 29. To provide for the lighting of said city by electric lights or other methods."

So, condensed for easy examination, the charter reads: "The mayor and aldermen of the city of Vicksburg shall be capable of contracting, but shall not contract in · a matter relating to work on the public streets or the erection, extension or repair of public buildings, where the cost of the work exceeds $500, or materials for it exceed $200, except upon sealed proposals after advertisement made, the lowest and best bids to be taken, with the right to reject all and readvertise; and the right to

contract to bind the city is vested in the board, and the following additional powers may be exercised by the board at any regular or special meeting, viz.:

" 1. To provide for the general welfare of the inhabitants.

" 2. To provide for the lighting of said city by electric light or other methods."

From the context we are forced to conclude that (1) electric lighting was not regarded as " relating to work on the public streets or erection, extension or repair of public buildings; " and, (2) that the board might, at any "regular or special meeting," pass ordinances or resolutions for the general welfare and for electric lighting without first advertising for bids.

Any other construction appears strained and artificial, and the tension is not loosened by the suggestions that the city, without any charter authority, had the inherent power to light her streets, and that the charter clause was simply a legislative reaffirmance of antecedent right.    The intent of the legislature to confer the power, without restriction, appears to us to be too plain from the collocation and order and sequence of the sections and article of the charter act, to admit of obscuration by learned argument about original power.    The very last legislative action on the subject, that in the municipal chapter of the code of 1892, shows that the lawmakers thought the power to be one to be conferred or prohibited, because it expressly confers it on cities and towns and prohibits its exercise by villages.

We are very clear in the opinion that section 25 of the charter has no application.    It seems certain from the whole act that the hiring of light was not regarded as a matter " relating to work on the public streets, or the erection, extension or repair of public buildings."    It is equally clear to us that, granting electricity to be a " material," the hiring of electric lamplights was not regarded as " material " for such " work, extension or repair."    Here no material is furnished in the purview of the act.    There is no purchase, but simply a hiring

of light belonging to another. Of this cannot be predicated the hiring of work on the streets or buildings of the city. An argument about what the law ought to be cannot change what the law is. That is for the legislative and not the judicial branch of the government.

We come now to the act of 1888 (laws 1888, p. 468), approved March 10, 1888, which is, in so far as pertinent, as follows:

"AN ACT to better secure safety and health in state institutions, and in the cities and towns of this state, and for other purposes.

"SECTION 1. *Be it enacted by the legislature of the state Mississippi*, That Hon. J. M. Stone, Hon. J. P. Walker, Gen. G. Y. Freeman, Hon. George G. Dillard and Hon. T. W. Sullivan, be, and they are hereby, constituted a commission on the part of the State of Mississippi, with full power and authority to contract with any waterworks company or electric light company or gas company, or each, for a series of years, not exceeding twenty-five, for annual supplies of water, electric lights or gaslights, or each, reasonably sufficient for public uses in the capitol and various humane and charitable institutions of the State of Mississippi, such contracts to provide that the yearly cost to be variable so as not to exceed in cost in any year the cheapest furnished by any similar company in any of the southern states with similar surrounding circumstances; that the powers hereby granted shall also extend to the municipal governments of incorporated cities and towns, and the authorities provided by law for the management of the affairs of such cities and towns shall make such contracts for them, after first submitting the proposition to the legally qualified voters of said city or town, and a two-thirds majority thereof voting for same, unless otherwise provided by the provisions of the charter of any city or town.

"Approved March 10, 1888."

Precedently to the passage of this act, and on February 29,

1888, there was passed an act referring to the municipal board of the city of Jackson, section 3 of which reads as follows:

"SECTION 3. *Be it further enacted*, That the said mayor and aldermen be, and are hereby, authorized and empowered to contract with any reliable corporation, association or individual for supplying the said city of Jackson with water and electric or gas lights, from year to year, and to levy and collect the tax necessary to discharge the debt in that behalf contracted by them; and they are directed and required to levy and collect such tax as may be required, from time to time, to pay the interest annually accruing on the bonds issued under the second section of this act, and create a proper sinking fund to discharge the same at maturity, or purchase them before maturity.

"Approved February 29, 1888."

It is claimed now that the last clause of section 1 of the first quoted of the above acts, that approved March 10, 1888, applied to and modified the charter of the city of Vicksburg so as to make the contract here in controversy void because not submitted to vote. In order to this result it is claimed that, in the charter of Vicksburg, it is not "otherwise provided." We hold under the previous reasoning of this opinion, that it is so "otherwise provided," because the charter expressly confers the power, without restriction, on the municipal board at any "regular or special meeting." Besides, in construing the section of the act secondly above quoted, this court expressly so held in the case of *Light, etc., Co.* v. *Jackson*, 73 Miss., 644. If the precise point was not made, the omisston is quite significant of the opinion of the eminent counsel for appellee in that case that there was nothing in it. Aside from this, the question was at the very root of the cause, and was considered and decided, and it is the exact question in the case at bar, except that this case is somewhat stronger in favor of the power than the case decided.

By section 3 of the act of February 29, 1888, the Jackson board was "hereby authorized and empowered to contract," etc., while, by the Vicksburg charter act the board was authorized to so contract "at any regular or special meeting." We presume that no charter then existent "otherwise provided" by an express prohibition of electric lighting without vote. The grant of the power without restriction is to "otherwise provide."

In the case before us we think the time of the duration of the contract, which was ten years at most, was reasonable. Within its charter powers, the board has a discretion independent of courts, and no exercise of it will be held void for unreasonableness, unless so gross as to strongly suggest fraud or corruption. The people elect their council, and the courts are not chosen members of it.

We think, from the evidence, that the price to be paid was reasonable, that fraud is not shown, that the contract was not exclusive in the purview of the law, and not violative of section 183 of the constitution, and not avoided by the provision for special tax levy, and, on the question of the propriety or necessity of the contract, very manifestly the board, and not the courts, must determine.

It cannot be assumed that the board was actuated by the purpose to "lend the credit" of the city in aid of the corporation, with which it contracted for a reasonable time and price, or that it was so influenced by anything in the application for the contract.

If the contract was reasonable and necessary, it is difficult to see how the question of its being exclusive, even if the contract be exclusive, and we hold it was not, can be raised by a taxpayer. That would arise where another person or company applied, or where the city itself invoked it. *Waco* v. *Waco*, 27 S. W. Rep., 675; *Grant* v. *City*, 36 Iowa, 396.

It is not easy to see, either, how a taxpayer can complain of the provision for a special levy until it is shown to be a damage

to him by being in excess of the charter limitation of total levy, and, unless it exceeds this limitation, there can be no objection to that clause in the contract. We fail to find evidence of any such improper lobbying as could vitiate the contract.

*Affirmed.*